## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **MONUMENT PEAK** | § | |
| **VENTURES, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 2:25-cv-1159** |
| **v.** | § | |
| | § | |
| **ARNOLD & RICHTER CINE** | § | **JURY TRIAL** |
| **TECHNIK GMBH & CO.** | § | |
| **BETRIEBS KG,** | § | |
| **Defendant.** | § | |

## COMPLAINT AND JURY DEMAND

Plaintiff Monument Peak Ventures, LLC alleges the following for its

Complaint for patent infringement against Arnold & Richter Cine Technik GmbH

& Co. Betriebs KG ("ARRI"):

### THE PARTIES

1.      Plaintiff, Monument Peak Ventures, LLC, is a Texas Limited Liability

Company with its principal place of business in Allen, Texas.

2.      Arnold & Richter Cine Technik GmBH & Co. Betriebs KG. is a

limited partnership with a limited liability company as general partner, organized

under the laws of Germany, with a principal place of business at Herbert-Bayer

Street 10, 80807 Munchen, Germany. ARRI manufactures, demonstrates, imports

into the United States, sells and/or offers for sale in the United States camera

systems that feature displays, image correction functionality, and power

management that embody the subject matter claimed in MPV's patents.

3.　　　ARRI markets, offers for sale, and/or sells infringing camera systems throughout the United States, including within this district.  ARRI can be served with process through the Texas Secretary of State.

4.　　　Defendant ARRI has known and been on notice of MPV's patents and how ARRI's products embody MPV's patent claims since April 2020.

## JURISDICTION AND VENUE

5.　　　MPV brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.　　　Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  ARRI does business in this judicial district, has committed acts of infringement in this judicial district and has purposely sought and transacted business in this judicial district involving the accused products.

7.　　　ARRI is subject to this Court's specific and general personal jurisdiction pursuant to the Texas Long-Arm Statute and consistent with due process, in view of its substantial business in Texas and in this judicial district including: (a) its infringing activities alleged in this complaint by which Defendant purposefully avails itself of the privilege of conducting business

activities in this state and district, and thus, submits itself to the jurisdiction of this Court; and (b) regularly doing or soliciting business, contracting with and engaging in other persistent conduct targeting residents of Texas and this district, or deriving substantial revenue from goods and services offered for sale, sold, and imported to and targeting residents of Texas and this district directly and through or in concert with intermediaries, agents, distributors, importers, customers, subsidiaries and/or consumers.

8.      ARRI transacts business in this judicial district and has committed acts of infringement in this judicial district.

9.      ARRI's presence and conduct directed to residents of Texas and into this district is intended to further and advance the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing ARRI products in Texas and in this district.

10.     ARRI directly or through intermediaries including authorized distributors makes, uses, offers for sale, imports, sells, advertises, or distributes products and services and inducing infringement of MPV's patents in the United States, in Texas, and in this district.

11.     ARRI conducts its business of marketing, distributing, deploying, and selling products and services in Texas and in this district through its agents, representatives, affiliates, related entities, partners, distributors, and retailers.

12.     ARRI continuously and systematically solicits business and contracts with residents of Texas and this district.

13.     This Court has personal jurisdiction over ARRI, directly and/or indirectly via the activities of ARRI and its intermediaries, agents, related entities, affiliates, distributors, importers, customers, subsidiaries, or consumers. Alone and in concert with these entities, ARRI has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas.

14.     The Court's exercise of personal jurisdiction over ARRI is also appropriate under Federal Rule of Civil Procedure 4(k)(2) because MPV's patent infringement claims arise under federal law; ARRI is not subject to the jurisdiction of the courts of general jurisdiction of any state; and exercising jurisdiction over ARRI comports with due process under the U.S. Constitution.

**MONUMENT PEAK VENTURES**

15.     MPV owns a portfolio of patents invented by the Eastman Kodak Company.  Since acquiring the Kodak portfolio, MPV has promoted the adoption of technologies claimed in the Kodak portfolio and has entered into license agreements with over one hundred companies.

16.     ARRI has infringed, directly and indirectly, U.S. Patent Nos. 6,862,039 (the "'039 Patent") and 7,187,858 (the "'858 Patent"), and has and

continues to infringe U.S. Patent No. 7,827,508 (the "'508 Patent"), (collectively, the "MPV Asserted Patents").

## COUNT 1 - INFRINGEMENT OF U.S. PATENT NO. 6,862,039

17.     MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

18.     MPV is the owner, by assignment, of U.S. Patent No. 6,862,039.

19.     As the owner of the '039 Patent, MPV holds all substantial rights in and under the '039 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

20.     The '039 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

21.     MPV alleges that ARRI infringed the '039 Patent before it expired.

22.     The '039 Patent was issued by the United States Patent and Trademark Office on March 1, 2005, and is titled "Electronic Camera Including Color Tone Adjustment of a Real-Time Image."

23.     ARRI had directly infringed at least claim 1 of the '039 Patent before expiry of the patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C § 271 by using (including its own testing), making, selling, offering for sale, in the United States, and/or importing into the United States Accused ARRI camera systems that satisfy each limitation of one or

more claims of the '039 Patent in an exemplary manner as described below.

24.      Infringing ARRI cameras include ARRI's ALEXA Mini, ALEXA Mini LF, ALEXA LF, and AMIRA products that include a monitor which allows users to display and adjust live images, and devices having the same or similar infringing structure or functionality (collectively, the "'039 Accused Products).

25.      Each of the '039 Accused Products satisfy each and every element of each asserted claim of the '039 Patent either literally or under the doctrine of equivalents.

26.      ARRI thus had infringed the '039 Patent before the expiry of the patent.

27.      ARRI's activities had been without authority of license under the '039 Patent.

28.      ARRI's users, customers, agents, and/or other third parties ("collectively, "third-party infringers") had infringed the '039 Patent before the expiry of the patent by using, making, selling, offering for sale, licensing, and/or importing the Accused Products into the United States according to their normal and intended use.

29.      Claim 1 of the '039 Patent recites an embodiment of the claimed subject matter:

> 1. An electronic camera which is portable and has a display device for showing a photoelectric-converted image, said camera comprising:

input means for entering a color tone adjustment value of a real-time image shown on the display device;

adjustment means for adjusting the color tone of the real-time image according to the entered adjustment value; and

correction means for correcting the real-time image according to the adjusted color tone.

30.      Each of the '039 Accused Products is an example of an electronic camera which is portable and has a display device for showing a photoelectric-converted image.

31.      For example, the '039 Accused Products are handheld cameras, which are examples of portable electronic cameras, having viewfinders (*e.g.,* display device) for showing a photoelectric-converted image.



**HDR viewfinder**

Familiar MVF-2 viewfinder and menu structure from ALEXA Mini LF; now with the option to switch to HDR viewing in the eyepiece.

https://web.archive.org/web/20220819235048/https://www.arri.com/en/camera-

systems/cameras/alexa-35

32.    Each '039 Accused Product includes an input means for entering a color tone adjustment value of a real-time image shown on the display device.

33.    For example, the '039 Accused Products include VF1 and VF2 hotkey buttons (*e.g.*, "input means") for increasing or decreasing a white balance adjustment value (*e.g.*, "entering a color tone adjustment value") of a live (*e.g.*, "real-time") image.



https://www.youtube.com/watch?v=WwsZlJ6YicU&t=585s

---

**9.6    White Balance**

White Balance (WB) is the color balance of the camera that should be matched to the color temperature of the light in use. White balance is a red-blue adjustment of the image. To adjust the green-magenta balance, use the color compensation (CC) adjustment. For example, a fluorescent source will have peaks in its spectrum that cannot be corrected with red-blue white balance alone. The CC shift can correct these peaks up to a full green or full magenta gel. One step of CC shift is equal to 035 Kodak CC values or 1/8 Rosco values.

► Select *HOME > WB* to set the white balance.

► Select a preset from the list or *add* a custom white balance.

 User Buttons *WB Increase and WB Decrease* support to quickly change between white balance presets.

---

https://web.archive.org/web/20220808093304/https://www.arri.com/resource/blob/284044/2c3e40c90b7faae31f794dc40a5f9c58/alexa-35-user-manual-data.pdf

---

**15    User Buttons**

The camera is equipped with nine assignable user buttons, 1-6 on the left and 7-9 on the camera right side. The MVF-2 is equipped with two additional user buttons, VF 1 and VF 2. Each button can be assigned a variety of functions.

Once a button is assigned a function, press the button to trigger the function. The blue LED on the button reflects the functional status.

---

https://web.archive.org/web/20220808093304/https://www.arri.com/resource/blob/284044/2c3e40c90b7faae31f794dc40a5f9c58/alexa-35-user-manual-data.pdf

---

| *WB Increase* | Sets the white balance to the next higher value in the list. |
| *WB Decrease* | Sets the white balance to the next lower value in the list. |

---

https://web.archive.org/web/20220808093304/https://www.arri.com/resource/blob/284044/2c3e40c90b7faae31f794dc40a5f9c58/alexa-35-user-manual-data.pdf

34.    The '039 Accused Products include an adjustment means for adjusting the color tone of the real-time image according to the entered adjustment value.

35.    For example, the '039 Accused Products feature hardware and/or software circuitry (*e.g.*, "adjustment means") that is activated by pressing the VF1

and VF2 hotkey buttons for adjusting the white balance of the live image according to the increased or decreased white balance adjustment value.

### 9.6    White Balance

White Balance (WB) is the color balance of the camera that should be matched to the color temperature of the light in use. White balance is a red-blue adjustment of the image. To adjust the green-magenta balance, use the color compensation (CC) adjustment. For example, a fluorescent source will have peaks in its spectrum that cannot be corrected with red-blue white balance alone. The CC shift can correct these peaks up to a full green or full magenta gel. One step of CC shift is equal to 035 Kodak CC values or 1/8 Rosco values.

►  Select *HOME* > *WB* to set the white balance.

►  Select a preset from the list or *add* a custom white balance.

    User Buttons *WB Increase* and *WB Decrease* support to quickly change between white balance presets.

https://web.archive.org/web/20220808093304/https://www.arri.com/resource/blob/284044/2c3e40c90b7faae31f794dc40a5f9c58/alexa-35-user-manual-data.pdf

  

| | |
|---|---|
| **WB Increase** | Sets the white balance to the next higher value in the list. |
| **WB Decrease** | Sets the white balance to the next lower value in the list. |

https://www.youtube.com/watch?v=6QHiDqrgfJA
https://www.youtube.com/watch?v=WwsZlJ6YicU&t=585s
https://web.archive.org/web/20220808093304/https://www.arri.com/resource/blob/284044/2c3e40c90b7faae31f794dc40a5f9c58/alexa-35-user-manual-data.pdf

36.    The '039 Accused Products include a correction means for correcting the real-time image according to the adjusted color tone.

37.    For example, the '039 Accused Products include hardware and/or software circuitry (*e.g.*, "correction means") for correcting the live image according to the adjusted white balance.

### 9.6  White Balance

White Balance (WB) is the color balance of the camera that should be matched to the color temperature of the light in use. White balance is a red-blue adjustment of the image. To adjust the green-magenta balance, use the color compensation (CC) adjustment. For example, a fluorescent source will have peaks in its spectrum that cannot be corrected with red-blue white balance alone. The CC shift can correct these peaks up to a full green or full magenta gel. One step of CC shift is equal to 035 Kodak CC values or 1/8 Rosco values.

► Select *HOME* > *WB* to set the white balance.

► Select a preset from the list or *add* a custom white balance.

  User Buttons *WB Increase* and *WB Decrease* support to quickly change between white balance presets.

https://web.archive.org/web/20220808093304/https://www.arri.com/resource/blob/284044/2c3e40c90b7faae31f794dc40a5f9c58/alexa-35-user-manual-data.pdf

  

| WB Increase | Sets the white balance to the next higher value in the list. |
|---|---|
| WB Decrease | Sets the white balance to the next lower value in the list. |

https://www.youtube.com/watch?v=6QHiDqrgfJA
https://www.youtube.com/watch?v=WwsZlJ6YicU&t=585s
https://web.archive.org/web/20220808093304/https://www.arri.com/resource/blob/284044/2c3e40c90b7faae31f794dc40a5f9c58/alexa-35-user-manual-data.pdf

38.    ARRI thus infringed at least claim 1 of the '039 Patent.

39.    ARRI was notified of the '039 Patent and how it infringes at least

claim 1 in April 2020. ARRI's knowledge of the '039 Patent, which covers operating the '039 Accused Products used as intended such that all limitations of the asserted claims of the '039 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products that directly infringes the '039 Patent, or, at the very least, rendered ARRI willfully blind to such infringement.

40.     ARRI indirectly infringed one or more claims of the '039 Patent before expiry of the patent by knowingly and intentionally inducing others, including ARRI customers, users, agents, end-users, and/or third parties in the United States to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling in the United States, and/or importing into the United States products that include infringing technology, such as the '039 Accused Products, including the Alexa LF and associated software. ARRI induced such third parties to directly infringe in the United States and authorized them to sell and offer to sell the '039 Accused Products.

41.     ARRI's users, customers, agents and/or other third parties (collectively, "third-party infringers") infringed the '039 Patent before expiry of the patent, including under 35 U.S.C. § 271(a), at least claim 1 of the '039 Patent by Patent by making, using, offering to sell, selling in the United States, and/or importing into the United States the '039 Accused Products.

42.     Since April 2020, ARRI had knowledge of the '039 Patent, which

covers operating the accused ARRI products in their intended manner such that all limitations of the asserted '039 Patent claims were met, and knowledge about how the '039 Accused Products are used by the third-party infringers to practice the '039 Patent, or at the very least, rendered ARRI willfully blind to such infringement.

43.    ARRI has had notice of the '039 Patent, since at least no later than April 2020, and has known or been willfully blind to the fact that third-party infringers' making, selling, offering to sell, using, in the United States, and/or importing into the United States of the '039 Accused Products directly infringed the '039 Patent since at least April 2020 and continued to infringe through expiration of the patent.

44.    Having known or been willfully blind to the fact that the third-party infringers' use, sale, offer to sell into the United States, and/or importation of the '039 Accused Products into the United States in their intended manner such that all limitations of at least claim 1 of the '039 Patent were met directly infringed the '039 Patent, ARRI actively encouraged the third-party infringers to directly infringe the '039 Patent by making, using, testing, selling, offering for sale in the United States and/or importing into the United States the '039 Accused Products before expiry of the patent, and by, for example: marketing, advertising and promoting the features of the infringing products, including a monitor which

allows using to display and adjust live images, and encouraged the third-party infringers to operate them in an infringing manner; supporting and managing the third-party infringers' use; and providing technical assistance as to how the infringing products should be used by third-party infringers by, for example, publishing instructional information directing third-party infringers how to make and use the infringing products to infringe claim 1 of the '039 Patent.

45. ARRI induced the third-party infringers to infringe at least claim 1 of the '039 Patent by directing, encouraging, and inducing third party infringers to operate, make, use, offer to sell, or sell, in the United States, and/or import into the United States the '039 Accused Products that satisfy all limitations of the asserted claims of the '039 Patent before expiry of the patent.

46. ARRI advertised and promoted the features of the infringing products and encouraged the third-party infringers to operate them in an infringing manner. ARRI further provided technical assistance as to how the infringing products should be used by the third-party infringers by, for example, publishing instructional information directing third-party infringers how to make and use the '039 Accused Products to infringe claim 1 of the '039 Patent.

47. In response, the third-party infringers acquired and operated, sold, offered to sell, and marketed, in the United States, and/or imported into the United States, the '039 Accused Products such that all limitations of the asserted claims of

'039 Patent were practiced before expiry of the patent.

48.      ARRI specifically intended to induce, did induce, the third-party infringers to infringe at least claim 1 of the '039 Patent, and ARRI knew of or was willfully blind to such infringement before expiry of the patent. ARRI advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the '039 Accused Products before expiration of the patent.

49.      ARRI induced infringement under 35 U.S.C. § 271(b) of at least claim 1 of the '039 Patent.

50.      ARRI knew that the '039 Accused Products were made and operated in a manner that satisfies all limitations of at least claim 1 of the '039 Patent.

51.      ARRI's acts of infringement of the '039 Patent are willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).  Since April 2020, ARRI has willfully infringed the '039 Patent by refusing to take a license.  Instead of taking a license to the '039 Patent, ARRI made the business decision to "efficiently infringe" the '039 Patent. In doing so, ARRI willfully infringed the '039 Patent.

52.      ARRI's activities were without authority of license under the '039 Patent.

53.     ARRI's acts of direct and indirect infringement caused damage to MPV and MPV is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 2 - INFRINGEMENT OF U.S. PATENT NO. 7,187,858

54.     MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

55.     MPV is the owner, by assignment, of U.S. Patent No. 7,187,858.

56.     As the owner of the '858 Patent, MPV holds all substantial rights in and under the '858 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

57.     The '858 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

58.     MPV alleges that ARRI had infringed the '858 Patent before it expired.

59.     The '858 Patent was issued by the United States Patent and Trademark Office on March 6, 2007, and is titled "Camera and Method for Operating a Camera Based Upon Available Power in a Supply."

60.     Infringing ARRI cameras include ARRI's ALEXA Mini, ALEXA LF,

ALEXA Mini LF, and AMIRA products that include a voltage detecting circuit, image capture system, and a controller for controlling camera operation when voltage level is sufficient, and products having the same or similar infringing structure or functionality (collectively, the "'858 Accused Products).

61.    ARRI had directly infringed, at least claim 1 of the '858 Patent before expiry of the patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271 by making, using (including its own testing), selling, offering for sale in the United States, and/or importing into the United States the '858 Accused Products, including ARRI's Alexa LF that satisfy one or more claims of the '858 Patent in an exemplary manner as described below.

62.    Each of the '858 Accused Products satisfy each and every element of each asserted claim of the '858 Patent either literally or under the doctrine of equivalents.

63.    ARRI's activities had been without authority of license under the '858 Patent.

64.    ARRI's users, customers, agents, and/or other third parties ("collectively, "third-party infringers") had infringed the '858 Patent before the expiry of the patent by using, making, selling, offering for sale, licensing, and/or importing the Accused Products into the United States according to their normal and intended use.

65.        Claim 1 of the '858 Patent recites an embodiment of the claimed

subject matter:

1. A camera for use with a power supply, the camera comprising:

a voltage detecting circuit adapted to detect a voltage level at
the power supply and to generate a voltage level signal;

an image capture system for performing a set of power-
consuming image capture operations; and

a controller that prevents the image capture system from
performing all of the operations in the set of image capture
operations when the voltage level signal indicates there is
power available in the power supply to perform only some
of the operations in the set of image capture operations.

66.        The '858 Accused Products include a camera for use with a power

supply.

67.        The '858 Accused Products use a battery or an external power supply

(*e.g.*, "power supply").

## Power Supply



- Use only ARRI-recommended power supply solutions.
- Manipulation of power supplies could result in serious injury or death, or damage
  to the ALEXA.

The ALEXA accepts an input voltage range from 18.5 V to 34 V DC on the on-board
battery and a range from 19.5 V to 34 V DC on the BAT connector. Do not supply
power outside the specified voltage range.

https://www.arri.com/resource/blob/42690/ccb47e7386f7e1f9161a885bf42781a0/arri-alexa-lf-user-manual-sup-4-0-data.pdf

68.    The '858 Accused Products include a voltage detecting circuit adapted to detect a voltage level at the power supply and to generate a voltage level signal.

69.    The '858 Accused Products include a battery level circuit (*e.g.*, "voltage detecting circuit") to detect remaining capacity (*e.g.*, "voltage level") at the battery and to generate a battery percentage and/or voltage display (*e.g.*, "voltage level signal").



https://www.arri.com/resource/blob/42690/ccb47e7386f7e1f9161a885bf42781a0/arri-alexa-lf-user-manual-sup-4-0-data.pdf

| BAT 1 | The voltage level of the power source present at the BAT connector, or the remaining capacity of an attached battery in percentage if it transmits this information. |
| BAT 2 | The voltage level of a battery attached to the onboard battery adapter, or the remaining capacity of an attached battery in percentage if it transmits this information. |

https://www.arri.com/resource/blob/42690/ccb47e7386f7e1f9161a885bf42781a0/arri-alexa-lf-user-manual-sup-4-0-data.pdf

70.    The infringing ARRI products comprise an image capture system for performing a set of power-consuming image capture operations.

71.    The 858 Accused Products include CMOS image sensors (*e.g.*, "image capture system") for capturing images (*e.g.*, "power-consuming image capture operations").

## 20.1    Technical data

**Image Sensor**

Type                                            A2X CMOS sensor

https://www.arri.com/resource/blob/42690/ccb47e7386f7e1f9161a885bf42781a0/arri-alexa-lf-user-manual-sup-4-0-data.pdf

| Recorded image resolutions (pixels) | 1920 x 1080 (LF 16:9 HD)<br>2048 x 1152 (LF 16:9 2K)<br>3840 x 2160 (LF 16:9 4K UHD)<br>3840 x 2160 (LF 16:9 ARRIRAW)<br>4448 x 1856 (LF 2.39:1)<br>4448 x 3096 (LF Open Gate) |

https://www.arri.com/resource/blob/42690/ccb47e7386f7e1f9161a885bf42781a0/arri-alexa-lf-user-manual-sup-4-0-data.pdf

72.     The '858 Accused Products include a controller that prevents the image capture system from performing the set of image capture operations when the voltage level signal indicates there is power available in the power supply which is less than sufficient to perform all of the operations in the set of image capture operations, whereby the camera is rendered inactive before the power supply has practically run out of power.

73.     The '858 Accused Products include a processor (*e.g.*, "controller") that prevents the camera from capturing images when the voltage level indicator indicates the battery level at 1 Volt below the warning level (*e.g.*, "power supply which is less than sufficient to perform all of the operations in the set of image capture operations"), recording is unavailable (*e.g.*, "the camera is rendered inactive") before the battery has practically run out of power.

---

**NOTICE**

When the battery voltage drops below the warning level, the *BAT1* level in the camera display will start flashing. A white *i* will appear, signaling more information is available on the *INFO* screen. For more information on setting the low battery warning level, see *Menu>System>Power* (on page 109).

---

https://www.arri.com/resource/blob/42690/ccb47e7386f7e1f9161a885bf42781a0/arri-alexa-lf-user-manual-sup-4-0-data.pdf

| **NOTICE** |
| --- |
| When the voltage level reaches 1 Volt below the warning level set in the POWER menu, the ALEXA displays a battery error message and recording is unavailable. The camera will read the voltage level as insufficient. |

https://www.arri.com/resource/blob/42690/ccb47e7386f7e1f9161a885bf42781a0/arri-alexa-lf-user-manual-sup-4-0-data.pdf

| BAT1 (Plug) warning | Select to adjust the voltage level at which a power warning is displayed for the power source connected to the BAT plug. The level can be adjusted to match the battery type used. The default value is 22.0 V. |
| --- | --- |
| BAT2 (Onboard) warning | Select to adjust the voltage level at which a power warning is displayed for the onboard battery. The level can be adjusted to match the battery type used. The default value is 24.0 V. |
| BAT2 warning percent | Select to adjust the percentage level at which a power warning is displayed for the onboard battery. This setting only takes effect if a smart battery is attached that communicates its remaining percentage to the camera. The level can be adjusted to match the battery type used. The default value is 20 percent. |

https://www.arri.com/resource/blob/42690/ccb47e7386f7e1f9161a885bf42781a0/arri-alexa-lf-user-manual-sup-4-0-data.pdf

74.    ARRI thus infringed at least claim 1 of the '858 Patent.

75.    ARRI was provided with notice of the '858 Patent and how it

infringes at least claim 1 no later than April 2020.  ARRI's knowledge of the '858

Patent, which covers operating the '858 Accused Products used as intended such

that all limitations of the asserted claims of the '858 Patent are met, extends to its

knowledge that the third-party infringers' use of the Accused Products that directly infringes the '858 Patent, or, at the very least, rendered ARRI willfully blind to such infringement.

76.    ARRI indirectly infringed one or more claims of the '858 Patent before expiry of the patent by knowingly and intentionally inducing others, including ARRI customers, users, agents, end-users, and/or third parties in the United States to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling in the United States, and/or importing into the United States products that include infringing technology, such as the '858 Accused Products, including the Alexa LF and associated software. ARRI induced such third parties to directly infringe in the United States and authorized them to sell and offer to sell the '858 Accused Products.

77.    ARRI's users, customers, agents and/or other third parties (collectively, "third-party infringers") infringed the '858 Patent before expiry of the patent, including under 35 U.S.C. § 271(a), at least claim 1 of the '858 Patent by Patent by making, using, offering to sell, selling in the United States, and/or importing into the United States the '858 Accused Products.

78.    Since April 2020, ARRI has had knowledge of the '858 Patent, which covers operating the accused ARRI products in their intended manner such that all limitations of the asserted '858 Patent claims were met, and knowledge about how

the '858 Accused Products are used by the third-party infringers to practice the

'858 Patent, or at the very least, rendered ARRI willfully blind to such

infringement.

79.     ARRI has had notice of the '858 Patent, since at least no later than

April 2020, and has known or been willfully blind to the fact that third-party

infringers' making, selling, offering to sell, using, in the United States, and/or

importing into the United States of the '858 Accused Products directly infringed

the '858 Patent since at least April 2020 and continued to infringe through

expiration of the patent.

80.     Having known or been willfully blind to the fact that the third-party

infringers' use, sale, offer to sell into the United States, and/or importation of the

'858 Accused Products into the United States in their intended manner such that all

limitations of at least claim 1 of the '858 Patent were met directly infringed the

'858 Patent, ARRI actively encouraged the third-party infringers to directly

infringe the '858 Patent by making, using, testing, selling, offering for sale in the

United States and/or importing into the United States the '858 Accused Products

before expiry of the patent, and by, for example: marketing, advertising and

promoting the features of the infringing products, including a voltage detecting

circuit, image capture system and a controller for controlling camera operation

when voltage level is insufficient, and encouraged the third-party infringers to

operate them in an infringing manner; supporting and managing the third-party infringers' use; and providing technical assistance as to how the infringing products should be used by third-party infringers by, for example, publishing instructional information directing third-party infringers how to make and use the infringing products to infringe claim 1 of the '858 Patent.

81.    ARRI induced the third-party infringers to infringe at least claim 1 of the '858 Patent by directing, encouraging, and inducing third party infringers to operate, make, use, offer to sell, or sell, in the United States, and/or import into the United States the '858 Accused Products that satisfy all limitations of the asserted claims of the '858 Patent before expiry of the patent.

82.    ARRI advertised and promoted the features of the infringing products and encouraged the third-party infringers to operate them in an infringing manner. ARRI further provided technical assistance as to how the infringing products should be used by the third-party infringers by, for example, publishing instructional information directing third-party infringers how to make and use the '858 Accused Products to infringe claim 1 of the '858 Patent.

83.    In response, the third-party infringers acquired and operated, sold, offered to sell, and marketed, in the United States, and/or imported into the United States, the '858 Accused Products such that all limitations of the asserted claims of '858 Patent were practiced before expiry of the patent.

84.    ARRI specifically intended to induce, did induce, the third-party infringers to infringe at least claim 1 of the '858 Patent, and ARRI knew of or was willfully blind to such infringement before expiry of the patent. ARRI advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the '858 Accused Products before expiration of the patent.

85.    ARRI induced infringement under 35 U.S.C. § 271(b) of at least claim 1 of the '858 Patent.

86.    ARRI knew that the '858 Accused Products were made and operated in a manner that satisfies all limitations of at least claim 1 of the '858 Patent.

87.    ARRI's acts of infringement of the '858 Patent were willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).  Since at least April 2020, ARRI willfully infringed the '858 Patent by refusing to take a license.  Instead of taking a license to the '858 Patent, ARRI made the business decision to "efficiently infringe" the '858 Patent. In doing so, ARRI willfully infringed the '858 Patent.

88.    ARRI's activities were without authority of license under the '858 Patent.

89.    ARRI's acts of direct and indirect infringement caused damage to

MPV and MPV is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 3 - INFRINGEMENT OF U.S. PATENT NO. 7,827,508

90.    MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

91.    MPV is the owner, by assignment, of U.S. Patent No. 7,827,508.

92.    As the owner of the '508 Patent, MPV holds all substantial rights in and under the '508 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

93.    The '508 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

94.    ARRI has infringed, and continues to infringe, the '508 Patent.

95.    The '508 Patent was issued by the United States Patent and Trademark Office on November 2, 2010, and is titled "Hotkey Function in Digital Camera User Interface".

96.    Infringing ARRI cameras include ARRI's ALEXA Mini, ALEXA LF, ALEXA Mini LF, ALEXA 35 Xtreme, ALEXA 35 Live, AMIRA Live, and AMIRA products that feature a monitor and enable selection of menu information

as well as other ARRI products having the same or similar features (collectively, the "'508 Accused Products).

97.    ARRI has directly infringed, and continues to infringe, at least claim 1 of the '508 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271 by making, using (including its own testing), selling, offering for sale in the United States, and/or importing into the United States the Accused ARRI camera systems, including the ARRI Alexa mini that satisfy one or more claims of the '508 Patent in an exemplary manner as described below.

98.    The '508 Accused Products satisfy each and every element of each asserted claim of the '508 Patent either literally or under the doctrine of equivalents.

99.    The '508 Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '508 Patent.

100.    ARRI's activities have been without authority of license under the '508 Patent.

101.    ARRI's users, customers, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using, making, selling, offering for sale, licensing, and/or importing the '508 Accused Products according to their

normal and intended use.

102.     Claim 1 of the '508 Patent recites an embodiment of the claimed

subject matter:

> 1. A digital camera comprising:
>
>> a display;
>>
>> means for displaying on said display a menu of user selectable options, said user selectable options comprising at least an initial option in an initial position in said menu and a plurality of non-initial options in respective non-initial positions in said menu;
>>
>> first user activated means for sequentially navigating through said displayed menu of user selectable options;
>>
>> second user activated means for directly choosing one of said non-initial options without having to navigate sequentially through any of said initial and non-initial options, wherein the one of said non-initial options directly chosen by activation of the second user activated means is one of a plurality of user-defined menu shortcuts stored in the digital camera and selectable by activation of the second user activated means; and
>>
>> third user activated means for controlling storage of respective ones of the user-defined menu shortcuts in the digital camera, wherein activation of the third user activated means in conjunction with navigation to a particular one of said non-initial options using the first user activated means results in storage of a corresponding user-defined menu shortcut that is subsequently selectable by activation of the second user activated means.

103.     The '508 Accused Products (*e.g.*, ARRI Alexa 35) are digital cameras.



https://web.archive.org/web/20241124012303/https://www.arri.com/en/camera-systems/cameras/alexa-35

https://www.arri.com/en/learn-help/arri-camera-technology/viewfinders

104.    The '508 Accused Products each include a monitor (*e.g.*, Camera Control Monitor CCM-1) (*e.g.,* "display").



https://www.arri.com/en/camera-systems/camera-components/camera-control-monitor-ccm-1

105.    The '508 Accused Products include a means for displaying on said

display a menu of user selectable options, said user selectable options comprising at least an initial option in an initial position in said menu and a plurality of non-initial options in respective non-initial positions in said menu.

106.    For example, the '508 Accused Products include a processor (*e.g.*, "means for displaying") that displays on the monitor, a Camera menu (*e.g.*, "menu of user selectable options"), the Camera menu comprising, for example, a Look option (*e.g.*, "at least an initial option in an initial position") and a plurality of sub-options such as Look Intensity, VF Processing, SDI ½ Processing, etc. (*e.g.*, "a plurality of non-initial options in respective non-initial positions in said menu").



https://www.arri.com/en/camera-systems/camera-components/camera-control-monitor-ccm-1



https://www.arri.com/resource/blob/295034/32cd777b169e09fd8550eac84428698a/2022-09-alexa35-menusettingschart-sup1-1-data.pdf



https://tools.arri.com/fileadmin/adapps/simulators/a35/

107.    The '508 Accused Products include a first user activated means for sequentially navigating through said displayed menu of user selectable options.

108.    For example, the '508 Accused Products include a joystick (*e.g.*, "first user activated means") for sequentially navigating through the displayed user selectable options.



https://www.bhphotovideo.com/lit_files/1059698.pdf

**Physical controls and mechanical support**

The flexible user interface of the CCM-1 is perfectly suited to professional environments. All functions are adjustable via the touchscreen or via buttons and a joystick that are positioned on one side of the monitor and can be operated with one hand, leaving the other hand free.

https://www.arri.com/en/camera-systems/camera-components/camera-control-monitor-ccm-1

109.    The '508 Accused Products include a second user activated means for directly choosing one of said non-initial options without having to navigate sequentially through any of said initial and non-initial options, wherein the one of said non-initial options directly chosen by activation of the second user activated means is one of a plurality of user-defined menu shortcuts stored in the digital camera and selectable by activation of the second user activated means.

110.    The '508 Accused Products provide customizable User Buttons (*e.g.*, "second user activated means") for directly choosing the VF Check LogC4 sub-

option without having to navigate sequentially through the Look option and other sub-options, wherein the VF Check LogC4 sub-option directly chosen by activation of the customized User Button is one of a plurality of user-defined menu shortcuts stored in the camera's memory and selectable by activation of the customized User Button.



https://www.bhphotovideo.com/lit_files/1059698.pdf



https://www.bhphotovideo.com/lit_files/1059698.pdf

| Available user button functions: | |
|---|---|
| Off | De-activates the user button. |
| VF, SDI 1, SDI 2 Status Info | Switches Status Info between *Safe, Off* and *Overlay* on the chosen output. |
| VF, SDI 1, SDI 2 Check LogC4 | Switches the processing of the chosen output between the currently set value and LogC4. Supports smart behavior. |
| VF Check HDR | Switches the EVF processing between the currently set value and HDR. Supports smart behavior. |
| VF Desqueeze | Activates / de-activates Anamorphic Desqueeze on the VF Outputs. |
| VF, SDI 1, SDI 2 False Color | Activates / de-activates the False Color exposure tool on the chosen output. Supports smart behavior. |
| VF, SDI 1, SDI 2 Frame Lines | Activates / de-activates the frame lines on the chosen output. Supports smart behavior. |
| VF Lifted Black | Activates / de-activates EVF Lifted Black. Supports smart behavior. |
| VF, SDI 1 Peaking | Activates / de-activates Peaking on the chosen output. Supports smart behavior. |
| VF Processing | Switches VF Processing between *LogC4, Look (SDR)* and *Look (EVF: HDR, Mon: SDR)*. |
| VF, SDI 1, SDI 2 Surround View | Switches Surround View between *On, Off* and *Off + Colored Line* on the chosen output. |
| VF, SDI 1, SDI 2 Tracking Zoom | Activate / de-activate Tracking Zoom on the chosen output. Short Push: Activates face detection on the selected output. Subsequent Short Pushes: Cycle through detected faces to select the desired person for tracking. Long Push: Activates / de-activates Tracking Zoom. |

https://www.arri.com/resource/blob/401824/823cd1114755dc134ff9ee3c98be6e15/alexa-35-sup-5-2-0-user-manual-en-data.pdf

111. The '508 Accused Products include a third user activated means for controlling storage of respective ones of the user-defined menu shortcuts in the digital camera, wherein activation of the third user activated means in conjunction with navigation to a particular one of said non-initial options using the first user activated means results in storage of a corresponding user-defined menu shortcut that is subsequently selectable by activation of the second user activated means.

112. The '508 Accused Products provide a touch screen interface (*e.g.*, "third user activated means") for controlling storage of the VF Check LogC4 shortcut (*e.g.*, "respective ones of the user-defined menu shortcuts"), wherein using the touchscreen interface in conjunction with navigation of the VF Check LogC4

sub-option under the Monitor User Buttons sub-menu using the joystick results in storage of the corresponding VF Check LogC4 shortcut that is subsequently selectable by activation of the customized User Button.

## Camera menu

The CCM-1 provides access to the complete camera menu for adjustment of any and all camera settings. The menu can be controlled via the touchscreen or physical buttons and offers the same, intuitive layout as the MVF-2.

https://www.arri.com/en/camera-systems/camera-components/camera-control-monitor-ccm-1



https://tools.arri.com/fileadmin/adapps/simulators/a35/

113.    ARRI thus infringed at least claim 1 of the '508 Patent by using (including its own testing) in the United States.

114.    ARRI has infringed and continues to infringe at least claim 1 of the '508 Patent.

115.    ARRI was provided with notice of the '508 Patent and how it infringes at least claim 1 no later than April 2020.  ARRI's knowledge of the '508 Patent, which covers operating the '508 Accused Products used as intended such that all limitations of the asserted claims of the '508 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products that directly infringes the '508 Patent, or, at the very least, rendered ARRI willfully blind to such infringement.

116.    ARRI indirectly infringed and continues to indirectly infringe one or more claims of the '508 Patent by knowingly and intentionally inducing others, including ARRI customers, users, agents, end-users, and/or third parties in the United States to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling in the United States, and/or importing into the United States products that include infringing technology, such as the '508 Accused Products, including the Alexa LF.  ARRI induced such third parties to directly infringe in the United States and authorized them to sell and offer to sell the '508 Accused Products.

117.    ARRI's users, customers, agents and/or other third parties (collectively, "third-party infringers") has infringed and continues to infringe the '508 Patent, including under 35 U.S.C. § 271(a), at least claim 1 of the '508 Patent by Patent by making, using, offering to sell, selling in the United States, and/or importing into the United States the '508 Accused Products.

118.    Since April 2020, ARRI had knowledge of the '508 Patent, which covers operating the accused ARRI products in their intended manner such that all limitations of the asserted '508 Patent claims were met, and knowledge about how the '508 Accused Products are used by the third-party infringers to practice the '508 Patent, or at the very least, rendered ARRI willfully blind to such infringement.

119.    ARRI has had notice of the '508 Patent, since at least no later than April 2020, and has known or been willfully blind to the fact that third-party infringers' making, selling, offering to sell, using, in the United States, and/or importing into the United States of the '508 Accused Products has directly infringed and continues to infringe the '508 Patent since at least April 2020.

120.    Having known or been willfully blind to the fact that the third-party infringers' use, sale, offer to sell into the United States, and/or importation of the '508 Accused Products into the United States in their intended manner such that all limitations of at least claim 1 of the '508 Patent were met directly infringed the

'508 Patent, ARRI actively encouraged the third-party infringers to directly infringe the '508 Patent by making, using, testing, selling, offering for sale in the United States and/or importing into the United States the '508 Accused Products, and by, for example: marketing, advertising and promoting the features of the infringing products that allow users to create hotkey functions in the digital camera interface and encouraged the third-party infringers to operate them in an infringing manner; supporting and managing the third-party infringers' use; and providing technical assistance as to how the infringing products should be used by third-party infringers by, for example, publishing instructional information directing third-party infringers how to make and use the infringing products to infringe claim 1 of the '508 Patent.

121.     ARRI induced the third-party infringers to infringe at least claim 1 of the '508 Patent by directing, encouraging, and inducing third party infringers to operate, make, use, offer to sell, or sell, in the United States, and/or import into the United States the '508 Accused Products that satisfy all limitations of the asserted claims of the '508 Patent.

122.     ARRI advertised and promoted the features of the infringing products and encouraged the third-party infringers to operate them in an infringing manner. ARRI further provided technical assistance as to how the infringing products should be used by the third-party infringers by, for example, publishing

instructional information directing third-party infringers how to make and use the '508 Accused Products to infringe claim 1 of the '508 Patent.

123.    In response, the third-party infringers acquired and operated, sold, offered to sell, and marketed, in the United States, and/or imported into the United States, the '508 Accused Products such that all limitations of the asserted claims of '508 Patent were practiced.

124.    ARRI specifically intended to induce, did induce, the third-party infringers to infringe at least claim 1 of the '508 Patent, and ARRI knew of or was willfully blind to such infringement before expiry of the patent. ARRI advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the '508 Accused Products.

125.    ARRI induced infringement under 35 U.S.C. § 271(b) of at least claim 1 of the '508 Patent.

126.    ARRI knew that the '508 Accused Products were made and operated in a manner that satisfies all limitations of at least claim 1 of the '508 Patent.

127.    ARRI's acts of infringement of the '508 Patent are willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).  Since at least April 2020, ARRI willfully infringed the '508 Patent by refusing to take a license.  Instead of taking a license to the '508 Patent, ARRI

made the business decision to "efficiently infringe" the '508 Patent. In doing so, ARRI willfully infringed the '508 Patent.

128.    ARRI's activities were without authority of license under the '508 Patent.

129.    ARRI's acts of direct and indirect infringement caused damage to MPV and MPV is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## NOTICE

130.    MPV does not currently distribute, sell, offer for sale, or make products embodying the Asserted Patents.

131.    ARRI has had notice of infringement of (1) the '039 Patent since at least as early as April 2020, (2) the '858 Patent since at least as early as April 2020, and (3) the '508 Patent since at least as early as April 2020.

## NOTICE OF REQUIREMENT OF LITIGATION HOLD

132.    ARRI is hereby notified it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and

tangible things that ARRI knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

133.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of

ARRI's agents, resellers, or employees if ARRI electronically stored information resides there.

134.     ARRI is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to ARRI's claims and/or defenses.  To avoid such a result, ARRI's preservation duties include, but are not limited to, the requirement that ARRI immediately notify its agents and employees to halt and/or supervise the functions of ARRI's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

MPV hereby demands a trial by jury on all claims, issues and damages so triable.

## PRAYER FOR RELIEF

MPV prays for the following relief:

a.  That ARRI be summoned to appear and answer;

b.  That the Court enter an order declaring that ARRI has infringed each of the Asserted Patents.

c.  That the Court grant MPV judgment against ARRI for all actual, consequential, special, punitive, increased, and/or statutory damages, including, if necessary, an accounting of all damages; pre and post-

judgment interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action;

d. That ARRI be found to have willfully infringed the Asserted Patents; and

e. That MPV be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated:  November 25, 2025                    Respectfully submitted,


CONNOR LEE & SHUMAKER PLLC


By:    _____

Cabrach J. Connor
Cab@CLandS.com;
Texas Bar No. 24036390
John M. Shumaker
John@CLandS.com
Texas Bar No. 24033069
Jennifer Tatum Lee
Jennifer@CLandS.com
Texas Bar No. 24046950

609 Castle Ridge Road, Suite 450
Austin, Texas 78746
512.646.2060 Telephone
888.387.1134 Facsimile